The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Amy L. Pfeiffer, the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 10 March 1999 as:
 STIPULATIONS
1. The date of plaintiffs alleged injury by accident is 28 July 1997.
2. On that date, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. All parties are properly before the Industrial Commission and the Commission constitutes the court of proper jurisdiction for this action.
4. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
5. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
6. On the date of the injury giving rise to this claim, Travelers Insurance Company was the carrier on the risk for workers compensation purposes.
7. Plaintiffs average weekly wage on the date of the injury giving rise to this claim was $286.45, which yields a compensation rate of $190.98.
8. Judicial notice may be and is taken of all Industrial Commission forms filed in this case, specifically including the Industrial Commission forms 18, 19, 33, 33R, and two forms 61.
9. Stipulated into evidence in this matter were the deposition transcripts and deposition exhibits. Introduced by plaintiff and admitted into evidence in this matter was plaintiffs exhibit one, her recorded statement. In addition, defendants introduced and the undersigned admitted into evidence in this matter defendants exhibit one, plaintiffs 27 January 1998 (incorrectly designated as "1997) resignation letter, and defendants exhibits two through five, statements of Lujuana Jones, Glenna Adkins, Janet Dinelli, and John Raynor, respectively. Finally, defendants introduced and the undersigned admitted into evidence in this matter defendants exhibit six, an emergency room record from 30 July 1997.
10. The issue to be determined in this matter is whether plaintiff sustained a compensable injury by accident on 28 July 1997, and if so, to what medical and indemnity benefits is plaintiff entitled under the Workers Compensation Act.
***********
 EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and the opinion set forth in this Opinion and Award.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 22 years old, married and had one child. Plaintiff has a high school diploma and has taken several college courses. Plaintiffs previous work history consists of working at a daycare and at two retail stores. On the date of the hearing, plaintiff was employed by North Carolina State University at wages greater than her pre-injury average weekly wage.
2. Prior to plaintiffs employment with defendant-employer, she had preexisting back problems stemming from her involvement in a motor vehicle accident in the early 1990s. Following this accident, plaintiff was seen in the local emergency room and then she was treated by chiropractors for low back pain. This pain eventually resolved but returned when plaintiff was involved in another motor vehicle accident. This second accident occurred in 1993 when her car was struck by another vehicle in a parking lot. Neither accident rendered her unable to work, although she occasionally experienced back pain, and at times she wore a back brace, particularly if she was lifting heavy items or standing more than usual.
3. Plaintiffs family believes that regular visits to a chiropractor maintain the alignment of the spine, which in turn helps the functioning of organs, thereby preventing illness. In fact, plaintiff has received regular chiropractic manipulations from her birth. When she moved to North Carolina from out of state, plaintiff began seeing chiropractor D.C. Ewert. Plaintiff first saw Ewert in May 1996 at which time she indicated that her chief complaints were stiffness in her right shoulder and low back pain. Plaintiff indicated at this time that she wished to pursue regular, monthly chiropractic care with Ewert. After moving to North Carolina, plaintiff did not seek treatment from a medical doctor for her back until after her alleged injury by accident of 28 July 1997.
4. Plaintiff began working for defendant-employer in January 1997, working 27 hours a week and earning $9.50 per hour. Plaintiffs position as a switchboard operator with defendant-employer consisted of answering incoming telephone calls at the switchboard and transferring the telephone calls to the various internal extensions. Plaintiff also updated long-distance phone logs and performed other clerical duties.
5. On Monday 28 July 1997, while at work, plaintiff was answering incoming telephone calls on the switchboard and sorting bills. She was seated on the edge of her chair, which was a swivel chair on wheels. While sorting the bills, one fell to the floor. Plaintiff pushed against the edge of her desk with her hands and leaned over in her chair to pick up the bill when the chair rolled and she fell on the floor, landing on her buttocks. No one witnessed this incident.
6. Plaintiff had no symptoms at the time of the fall or immediately thereafter. However, on her way home from work that evening, plaintiff began to feel pain in her low back that radiated down the back of her legs. When she got home, plaintiff took an over-the-counter anti-inflammatory medication, laid down, and her husband applied mineral ice to the affected areas.
7. Plaintiff worked normal hours the following day, 29 July 1997, but she had to wear a back brace. Evidence from other witnesses to the effect that plaintiff actually wore the back brace to work on 28 July 1997, the day of the alleged injury by accident, is deemed not credible. During her lunch break plaintiff did not go anywhere to eat, but instead laid down on the floor in an attempt to alleviate her back pain. Plaintiff also laid on the floor during her break. Prior to 29 July 1997, plaintiff had never had to lay down while at work due to back pain.
8. On the day of the fall, plaintiff told a coworker, Lujuana Jones, that she had fallen. On 29 July 1997 plaintiffs supervisor, John Raynor, was notified by plaintiffs father that plaintiff was seeking treatment for back pain. On 30 July 1997 Mr. Raynor again spoke to plaintiffs father, who told Mr. Raynor that plaintiff had fallen out of her chair at the switchboard. On 31 July 1997 plaintiff herself spoke with Mr. Raynor and told him that she had fallen out of her chair while she was working at the switchboard. On 19 August 1997, less than one month after the 28 July 1997 fall, plaintiff gave a statement to defendant-carrier that is completely consistent with the testimony she gave at the hearing regarding the incident.
9. Plaintiff had an already-scheduled chiropractor appointment a day or two after her alleged 28 July 1997 injury by accident. Plaintiff attended this appointment, at which the chiropractor noted that plaintiff appeared to be in extreme pain. D.C. Ewerts records from that day report that plaintiff "fell down @ work. The chiropractor did not actually treat or even fully examine plaintiff that day, due to her high pain level, but instead he prescribed ice packs, medication, rest, and a medical evaluation.
10. Plaintiff presented on 30 July 1997 to the emergency room of Wake Medical Center, where she complained of back pain that had persisted over the past few days after she fell onto her buttocks. Because of her severe pain and extreme difficulty ambulating, plaintiff was admitted to the hospital. An MRI revealed a large disc herniation at L5-S1 that the physician presumed was secondary to her fall from a chair. Plaintiff was discharged from the hospital on 2 August 1997 with two weeks bed rest.
11. Dr. Steven H. Turner, plaintiffs mothers family physician who saw plaintiff after the 28 July 1997 fall, subsequently referred plaintiff to Dr. St. Clair, a neurosurgeon. Dr. St. Clair first saw plaintiff on 18 August 1997. As a result of his examination of plaintiff, Dr. St. Clair recommended and plaintiff underwent a laminotomy and diskectomy on 20 August 1997. During the surgical procedure Dr. St. Clair found a huge free fragment herniation that appeared to be of relatively recent origin, as there was no scarring, calcification, or adhesions surrounding it. These objective findings explained and corroborated to Dr. St. Clairs satisfaction plaintiffs abrupt and significant change in symptoms occurring after her fall on 28 July 1997.
12. Plaintiffs testimony that she fell out of her chair while at work on 28 July 1997 is deemed by the Full Commission to be credible. In addition, the other evidence presented that plaintiff fell at home or wore a back brace to work on 28 July 1997 is deemed not credible. Therefore, despite her preexisting back problems and the fact that she is overweight, the most likely event that precipitated or caused plaintiffs large herniated disc at L5-S1 was her fall from her chair while at work on 28 July 1997.
13. After plaintiffs surgery on 20 August 1997, she was seen by Dr. St. Clair again on 3 September 1997, again on 1 October 1997, and for the last time on 17 August 1998. By no later than 17 August 1998, plaintiff had reached maximum medical improvement. Plaintiffs medical bills have been paid by the North Carolina Division of Vocational Rehabilitation.
14. On 1 October 1997, Dr. St. Clair released plaintiff to return to work on 6 October 1997 with a restriction of lifting no more than ten pounds for two weeks. Plaintiff returned to work for defendant-employer on 6 October 1997 under this two-week restriction. Plaintiff continued to work for defendant-employer through 4 February 1998, at which time she voluntarily resigned her employment in order to work for another employer. Plaintiff has continuously worked since becoming employed by North Carolina State University, where her wages are greater than her pre-injury average weekly wage.
15. As a result of her injury by accident of 28 July 1997, plaintiff was unable to work in any capacity from 30 July 1997 through and including 5 October 1997. Other than during this period of time, plaintiff has not been rendered incapable of working due to her 28 July 1997 injury by accident; nor has her wage-earning capacity been diminished.
16. Plaintiff sustained a ten percent permanent partial impairment of the back as a result of the 28 July 1997 injury by accident.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 28 July 1997 plaintiff sustained a compensable injury by accident arising out of and in the course of her employment when she fell out of her chair while working at the switchboard for defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of her compensable injury by accident on 28 July 1997, plaintiff was totally disabled from 30 July 1997 through 5 October 1997. N.C. Gen. Stat. 97-29.
3. As a result of her compensable injury by accident on 28 July 1997, plaintiff sustained a permanent partial impairment of ten percent to her back. N.C. Gen. Stat. 97-31(23).
4. Plaintiff is entitled to have defendants provide medical compensation for all medical treatment arising from her compensable injury by accident to the extent such treatment tends to effect a cure, give relief, or lessen the period of her disability. N.C. Gen. Stat.97-2(19) and 25. Plaintiffs entitlement to ongoing medical treatment continues for two years following her last payment of medical or indemnity compensation. N.C. Gen. Stat. 97-25.1
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee approved herein, defendant shall pay to plaintiff weekly benefits in the amount of $190.98 from 30 July 1997 through 5 October 1997. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to the attorney fee approved herein, defendant shall pay to plaintiff 30 weeks of permanent partial disability benefits in the amount of $190.98 per week.
3. Subject to the lien held by the North Carolina Division of Vocational Rehabilitation, defendants shall provide for all medical compensation received or to be received by plaintiff as a result of her compensable injury by accident to the extent such treatment tends to effect a cure, give relief, or lessen the period of her disability.
4. Plaintiffs counsel is entitled to a reasonable attorneys fee of 25 percent of the compensation awarded to plaintiff herein. Accordingly, defendants shall deduct one-fourth of the amount owed plaintiff in paragraph one of this Award and shall forward this amount directly to plaintiffs counsel of record. Defendants shall also forward directly to plaintiffs counsel every fourth check for the benefits owed to plaintiff under paragraph two of this Award.
5. Defendants shall bear the costs of this proceeding.
This 10th day of October 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER